IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ANTHONY BELLAND | : | |
| :--- | :--- | :--- |
| Plaintiff | : | Civil Action No. 1:05-CV-1595 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| MR. MATACHISKI et al., | : | |
| Defendants | : | |

## MEMORANDUM

Before the Court is Defendants' renewed motion for summary judgment. (Doc. No. 95.) For the reasons that follow, the motion will be granted.

**I.     BACKGROUND**

   **A.     Factual Background**

Plaintiff Anthony Belland is an inmate at State Correction Institute—Pittsburgh. On August 8, 2005, Belland filed a complaint in this Court alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by exposing him to unsafe levels of tobacco smoke at the State Correctional Institute in Camp Hill, Pennsylvania ("SCI-Camp Hill"). In particular, Belland alleged that after intake screening in January 2005, he was assigned to share a room with Larry Johnson, a known smoker. When Belland, an asthmatic, purportedly told Defendant Cliff[1] that he suffered from asthma and other lung problems, Cliff took no action. Belland then spoke with Defendants Hover[2] and Leadon about the problem, who also refused to take action.

A month later, Belland was moved to another cell in a different block. Three days after

---

[1] William S. Clifford.

[2] David Hoover.

the move, Eric Moyer, a chain smoker, was assigned to Belland's cell, though Moyer was "reluctant to move in because he knew of [Belland's] medical problem" based on Belland's use of an inhaler. Belland then "wrote and talked to Defendants Matachiski and Hover," though he received no response from them.

On March 7, 2005, Belland "requested grievances from Defendants Leadon and Horner," who both "refused." The next day, Defendant Leadon sent Belland and Moyer to the restricted housing unit, where his "request[s] for grievances were continually refused." On his removal from restricted housing, Belland was placed with a non-smoker.

**B.      Procedural Background**

On August 8, 2005, Belland, proceeding *pro se*, filed a complaint in this Court and requested leave to proceed *in forma pauperis*. After the Court screened the complaint pursuant to 28 U.S.C. §§ 1915 & 1915A (Doc. No. 7), Defendants were served with the complaint and waived service.

From this point forward, the procedural history of the case is rife with neglect. Numerous motions to continue and extensions were sought on both sides. Despite waiving service (Doc. No. 11), Defendants failed to timely file a responsive pleading to Belland's complaint. Defendants then sought leave for an extension of time to do so (Doc. No. 13), which was granted (Doc. No. 14). After another month, Defendants filed a four-paragraph answer with a single affirmative defense: "The Complaint fails to state a claim upon which relief can be granted." (Doc. No. 17.)

The Court then established discovery and dispositive-motion deadlines of February 28, 2006, and March 28, 2006, respectively. (Doc. No. 19.) After Belland, again proceeding *pro se*,

2

unsuccessfully attempted to serve interrogatories and requests for production of documents on Defendants, he requested and was granted an additional thirty days of discovery. (Doc. No. 21.) On the last day before discovery closed, Defendants moved for an additional thirty days to respond to Belland's discovery requests (Doc. No. 24), and the Court granted their motion (Doc. No. 25). At this point, Defendants had until April 27, 2006, to respond to Belland's discovery requests.

On April 29, 2006, Belland filed a motion to compel (Doc. No. 27), on the grounds that Defendants failed to timely respond to his discovery requests. Because Belland did not file a brief in support of the motion, the Court deemed the motion to compel withdrawn pursuant to the Local Rules.

After the dispositive-motion deadline came and went, the Court issued an order scheduling the case for trial in September 2006. On June 5, 2006, Belland filed a motion for appointment of counsel, noting that trial would commence in September. (Doc. No. 33.) On June 20, 2006, the Court conditionally granted the motion, noting "that there are many cases in which the district courts seek to appoint counsel but [no such counsel is] willing to accept appointment." (Doc. No. 35) (quoting <u>Tabron v. Grace</u>, 6 F.3d 147, 157 (3d Cir. 1993)). Shortly thereafter, Belland submitted a witness list, identifying his former cellmates Larry Johnson and Eric Moyer as witnesses. (Doc. No. 36.)

On August 11, 2006, counsel entered an appearance on Belland's behalf (Doc. No. 38), and promptly filed a motion to continue (Doc. No. 39). Belland's counsel then filed another motion to continue on November 15, 2006, indicating that he had "obtained the services of a law student" to aid in the preparation of the case, and that he wanted to "explore the possibility and

3

availability of a medical doctor who would be willing to testify on behalf of Plaintiff," and that he desired leave of court to "reopen the discovery process to include interrogatories and depositions which are clearly needed." (Doc. No. 41.) On November 20, 2006, the Court granted the motion to continue, and trial was rescheduled to March 2007.

On February 23, 2007, counsel for the parties indicated that they were not ready for trial, and on March 1, 2007, Belland submitted a motion to remove the case from the trial list and re-open discovery, which apparently had not begun. (Doc. No. 44.) The Court established new discovery and dispositive-motion deadlines of April 16, 2007, and June 8, 2007, respectively. (Doc. No. 48.) Later, Belland's counsel filed yet another motion for extension of time, now because he was attempting to "locate an expert to review the materials in the case" and because Defendants still had not responded to Belland's earlier discovery requests. (Doc. No. 49.)

Almost two weeks after the second dispositive-motion deadline passed, Defendants filed a motion for summary judgment. (Doc. No. 51.) Defendants neglected, however, to file either a supporting brief, a statement of material facts as required by local rule, or any exhibits, and the Court accordingly deemed the motion withdrawn. (Doc. No. 52.)

Two more motions for extension of time followed, first after Belland's counsel realized that he had incorrectly addressed the first discovery request (Doc. No. 55), and second because Defendants' counsel was "unable to locate one or more of the Defendants [*his own clients*] as they [had] been relocated to other Correctional Institutions," (Doc. No. 57). Then, on October 29, 2007, Defendants requested another extension of time in which to file dispositive motions—this despite the fact that two previous deadliness had passed—and the Court granted the request. (Doc. No. 60.) Finally, after the *third* dispositive motion deadline had passed,

4

Defendants filed a motion for enlargement of time in which to serve responses to Belland's discovery requests. (Doc. No. 51.) The Court granted Defendants' request, and extended the dispositive-motion deadline until January 22, 2008. (Doc. No. 62.)

On January 22, 2008, Defendants filed a motion for summary judgment and supporting documents. (Doc. Nos. 63-66.) After Belland failed to file papers in opposition to the motion, the Court issued a show cause order (Doc. No. 67), as to why Defendants' motion should not be granted as unopposed. Belland's counsel filed a response to the order, where he attributed the delay to his "late contact with Plaintiff." (Doc. No. 69.) In connection with the response, Belland filed a brief in opposition. (Doc. No. 68.) Before the Court ruled on that motion, Belland filed a motion to continue trial pending an examination by a medical doctor. (Doc. No. 85.) Sensing the barren record before the Court, and seeking to give Plaintiff an additional opportunity to support his claims, this Court dismissed the pending motion for summary judgment without prejudice pending the medical report and/or deposition. (Doc. No. 86.) From September 26, 2008 through at least February 2009, Plaintiff sought continuances to allow for the production of an expert report, and Defendants waited to refile their motion for summary judgment. (Doc. Nos. 85, 87, 88, 89, 93.) On April 17, 2009, Defendants once again filed their motion for summary judgment, to which Plaintiff has responded. (Doc. Nos. 95-98.) The matter is, at last, ripe before the Court for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986). The Court must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Norfolk S. Ry. Co. v. Basell USA, Inc., 512 F.3d 86, 91 (3d Cir. 2008) (quoting Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001)). The moving party bears the initial burden of establishing that there is no genuine question of material fact and that judgment as a matter of law is appropriate. Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). A fact is deemed material only if it would affect the outcome of the trial under the governing law. Anderson, 477 U.S. at 248. A dispute of fact is genuine if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Williams v. Borough of West Chester, 891 F.2d 458, 459 (3d Cir. 1989). The nonmoving party "cannot merely rely upon conclusory allegations in his pleadings or in memoranda and briefs to establish a genuine issue of material fact." Harter v. GAF Corp., 967 F.846, 852 (3d Cir. 1992). In other words, a nonmoving party "must adduce more than a mere scintilla of evidence in its favor," but it is not for the Court to make credibility determinations or to weigh the evidence. Id. at 460.

## III. DISCUSSION

Defendants argue that summary judgment should granted for three reasons. First, Defendants argue that there is no constitutional entitlement to grievance procedures, and therefore any failure to provide Belland with grievance forms does not amount to a constitutional violation; instead, Belland's failure to file a grievance evidences a failure to exhaust his

6

administrative remedies[3]. (Doc. No. 96 at 7.) Second, Defendants proffer that Belland has failed to prove he was housed with inmates who smoke, an essential aspect of his claim. (Doc. No. 96 at 9.) Defendants' third argument ties in closely with their second; they argue that Belland cannot sustain his Eighth Amendment claim because he cannot show that his exposure to environmental tobacco smoke was unreasonably high. Belland responds to these claims by asserting that his requests for grievance slips were ignored by Defendants, and that he need not prove the amount of smoking done in his cell because, "any duration [of exposure] to any environmental pollutants such as ETS, with a documented medical record in the Department of Corrections [sic] possession warning against the same is a violation of his Eight [sic] Amendment right." (Doc. No. 98 at 6.)

Under prevailing Third Circuit precedent, a prisoner may maintain an action under the Eighth Amendment based on his exposure to environmental tobacco smoke in one of two ways. Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003). First, the plaintiff can prove that prison officers, "with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his *future health*." Helling v. McKinney,

---

[3] The Court declines to base its ruling on the exhaustion issue because Plaintiff's failure to exhaust his administrative remedies is an affirmative defense in cases covered by the Prison Litigation Reform Act, Jones v. Bock, 549 U.S. 199, 216 (2007); Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002), but Defendants failed to plead this defense in their answer, as usually required for an affirmative defense. See, Fed. R. Civ. P. 8(c); (Doc. No. 17). Further, Plaintiff alleges in his complaint, though he does not support the contention with evidence or a sworn affidavit, that he was thwarted from following the administrative exhaustion requirement because prison officials denied him access to the necessary grievance forms, which, if sufficient to create a genuine issue of material fact, would preclude dismissal of his suit for failure to exhaust administrative remedies. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (finding that the district court incorrectly dismissed a plaintiff's claim where he argued "he did not file a grievance because prison officials denied him the necessary grievance forms and, as a result, he lacked 'available' administrative remedies.").

7

509 U.S. 25, 35 (1993) (emphasis added). Second, the plaintiff can prove that the officers demonstrated "deliberate indifference to [his] serious medical needs," thereby causing *contemporaneous injury*. Atkinson, 316 F.3d at 266 (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

Under the first approach, a plaintiff need not actually demonstrate any special susceptibility to injury from exposure to tobacco smoke, but must show that such exposure posed an "unreasonable risk of serious damage to his future health." As the Supreme Court explained, a claim of future injury is actionable because "a remedy for unsafe conditions need not await a tragic event." Helling, 509 U.S. at 33. Under the second approach, when a plaintiff has a medical condition rendering him susceptible to injury based on the exposure to tobacco smoke, the protections of the Eighth Amendment are triggered "even in less serious cases, where the prisoner does not experience severe torment or a lingering death" because deliberate indifference to medical needs is equivalent to "the infliction of unnecessary suffering [that] is inconsistent with standards of decency." Atkinson, 316 F.3d at 266 (quoting Estelle, 429 U.S. at 103). The Court will discuss whether summary judgment should be granted as to each approach.

### 1. Future Injury Claim

In Helling, the Supreme Court announced that to succeed on an Eighth Amendment exposure to tobacco smoke case involving future injury, a plaintiff must meet the deliberate indifference standard, which requires proof of objective and subjective elements. To prove the objective element, the plaintiff must show that he is "being exposed to unreasonably high levels of [environmental tobacco smoke]." Helling, 509 U.S. at 35. Among the factors to be considered in evaluating this element are the "seriousness of the potential harm and the

8

likelihood that such injury to health will actually be caused by exposure to [environmental tobacco smoke]," as well as "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Id. at 36. To prove the subjective element, the plaintiff must demonstrate "deliberate indifference" on the defendants' part, taken "in light of the prison authorities' current attitudes and conduct." Id. Related to the subjective element, defendants may raise "arguments regarding the realities of prison administration." Id. at 37.

Defendants argue that, at trial, Belland would be unable to prove the objective element of his future injury claim. In particular, Defendants claim that Belland "was housed in a cell with a 'known smoker' and a 'chain smoker' for [an] unstated duration—but certainly less than . . . 133 days." (Doc. No. 96 at 10.) In support of this argument, Defendants rely on Oliver v. Deen, 77 F.3d 156 (7th Cir. 1996), a Seventh Circuit decision involving a "mild asthmatic" plaintiff who shared a cell with cellmates who smoked for approximately 133 days and "had difficulty breathing, had chest pains, wheezed, and had . . . other common symptoms of an 'Asthma Attack' occuring." Id. at 158-59. In Oliver, the Seventh Circuit rejected the plaintiff's Eighth Amendment claims, finding that "[o]n this record, Oliver has not demonstrated that he was subjected to cruel and unusual punishment." Id. at 161. As the Third Circuit noted, however, Oliver did not hold that the concerns raised by the plaintiff were "insufficiently serious as a matter of law," Atkinson, 316 F.3d at 267 n.8, but rather the court held that, based on the factual record before it, plaintiff could not sustain his burden.

Moreover, in Atkinson, a case before the Third Circuit Court of Appeals on the issue of qualified immunity, the court found that the plaintiff could establish the objective factor of his

9

Eighth Amendment claim where "he [had been] subjected to continuous smoking for at least seven months," and where he had provided evidence that would support a finding that confining him in a smoke-filled cell "would increase his risk of death or non-fatal heart attack or stroke," and that "there was a 'reasonable medical probability' that appellee's symptoms (itchy and burning eyes, chest pains, a sore throat, a persistent cough with sputum production, paroxysms of coughing and resulting headaches) were precipitated by second-hand smoke." 316 F.3d at 265. Similarly, in Davis v. New York, 316 F.3d 93 (2d Cir. 2002), the Second Circuit held that genuine issues of material fact precluded summary judgment on a plaintiff's Eighth Amendment claim where the record indicated that he had been "housed in a double-bunk cell with a smoker" and that "he had always been housed in areas where the majority of inmates were smokers, and that, in the honor block area, he was surrounded by seven inmates who were chain smokers or frequent smokers, such that 'the smell of smoke fills the air and enter[s] my cell in a manner as though I was myself smoking,'" id. at 100-01.

Here, Plaintiff has proffered no evidence to support the objective element of his claim as the plaintiffs did in Atkinson or Davis. Plaintiff appears to rely on his position that "exposure of any duration to *any* environmental pollutants such as ETS, with a documented medical record in the Department of Corrections [sic] possession warning against the same is a violation of his Eight [sic] Amendment right." (Doc. No. 98 at 6 (emphasis added).) However, the Court cannot agree with that proposition. See, e.g., Atkinson, 316 F.3d at 262 ("The prisoner must show that he himself is being exposed to unreasonably high levels of ETS." (Quoting Helling, 509 U.S. at 35)). As Defendants point out, Plaintiff has not provided any medical expert to give testimony that *any* exposure to cigarette smoke created a unreasonable risk of serious injury to Belland's future

10

health. Although Belland states that there was a medical record before the Department of Corrections in which "there appears a clear check mark next to the box that reads 'No Exposure to Environ (sic) Polluts (sic)'," there is no other evidence on the record from which the Court could hold that, as a matter of law, Plaintiff's asthma was so severe that any exposure to smoke would constitute an Eighth Amendment violation. Because Plaintiff has also failed to provide any concrete information on the amount of smoking Johnson or Moyer did in the cell, it would require pure speculation to conclude that Belland's exposure was unreasonable, or that it constituted a serious risk to his future health. The only evidence on file as to the severity of Plaintiff's medical condition are his own unspecific averments made in the complaint that he is "asthmatic" and that he had "problems with his lungs which showed up in x-rays taken during intake." (Doc. No. 1 at 2.) In fact, over three and a half years since the filing of the complaint, Belland has not put forth any evidence to suggest that his health was harmed by the exposure, despite this Court's dismissal of an earlier motion for summary judgment to allow Plaintiff adequate time to have his health examined to produce evidence for trial. No deposition testimony has been provided to indicate that Belland actually suffered symptoms as a result of the exposure to ETS or cigarette smoke, and Belland did not allege any in his complaint. Accordingly, this case is more akin to <u>Oliver</u> than <u>Atkinson</u>: although Plaintiff could certainly set forth an Eighth Amendment claim for deliberate indifference to his asthma by Defendants' repeatedly placing him in cells with smokers, he has not done so on this record.

Accordingly, Defendants' motion for summary judgment on Belland's future injury Eighth Amendment claim will be granted.

## 2. *Present Injury Claim*

The analysis on the present injury claim is similar to that of the future injury claim. The Court notes, however, that in the context of the present injury claim even less-serious injuries can trigger the Eighth Amendment. Atkinson, 316 F.3d at 266. Further, there is a stronger case against summary judgment due to the Third Circuit's admonition that "[w]hen a susceptible prisoner is confined to a cell, a small and confined space, with a 'constant' smoker for an extended period of time, [certain] symptoms may transform what would otherwise be a passing annoyance into a serious ongoing medical need." Atkinson, 316 F.3d at 257. However, even considering this guidance, the Court finds that Belland has not adequately supplemented the record to support his Eighth Amendment claim; he has failed to allege *any* symptoms that arose as a result of smoking cell-mates. The record is devoid of any allegation of symptoms or even discomfort experienced by Belland as a result of smoke or ETS. After having been provided with an attorney and having had ample opportunity to create a record, Belland has provided no evidence to the Court in support of his claim. He has not supplemented his complaint with an affidavit or deposition from which the Court, or a jury, could determine whether he was exposed to ETS at a level which society is unwilling to accept. Nor has he supplied the record with the testimony from an expert that, with Belland's health conditions, *any* exposure to tobacco smoke or ETS posed a serious risk to his health.

In summary, Belland's claims that Defendants repeatedly ignored his pleas to be placed with a non-smoker because of his asthma, and in fact placed him in ostensibly *worse* conditions after his complaint, are sufficient to establish the subjective element of the claim, but the same cannot be said as to the objective element. Despite the numerous continuances, stays, and

opportunities to develop a record, Plaintiff has failed to submit evidence to support his claim. The allegations in Plaintiff's complaint are the only "evidence" put forward by Plaintiff as to the substance of his claim, and the complaint contains no allegations as to actual injury or suffering incurred as a result of being housed with a smoker. At this point, one month before trial, those unsupported allegations are inadequate for a reasonable jury to conclude, without pure speculation, that Plaintiff's Eighth Amendment rights were violated by Defendants.

## IV.　CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY BELLAND | : | |
|     Plaintiff | : | Civil Action No. 1:05-CV-1595 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| MR. MATACHISKI et al., | : | |
|     Defendants | : | |

### **ORDER**

**AND NOW**, on this 3rd day of June 2009, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendants' motion for summary judgment (Doc. No. 95) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendants and to close the case.

                                                S/ Yvette Kane
                                                Yvette Kane, Chief Judge
                                                United States District Court
                                                Middle District of Pennsylvania